96 So.2d 605 (1957)
233 La. 340
Charley PLUMMER
v.
MOTORS INSURANCE CORPORATION.
No. 43186.
Supreme Court of Louisiana.
June 10, 1957.
Rehearing Denied June 28, 1957.
*607 Edwin C. Schilling, Jr., Amite, Tucker & Schonekas, New Orleans, for defendants-appellants.
Richard Kilbourne, Clinton, for plaintiff-appellee.
HAWTHORNE, Justice.
Plaintiff Charley Plummer instituted this suit to recover $4,154.50, the alleged value of a GMC truck. Named as defendant is Motors Insurance Corporation. This defendant in its answer invoked the provisions of the Third-Party Practice Act, R.S. 13:3381 et seq., and made General Motors Acceptance Corporation a third-party defendant. Defendant prayed that any judgment rendered in plaintiff's suit be against the third-party defendant, but that in the event there was judgment against it, the insurance company, it have judgment for the same amount against the third-party defendant, General Motors Acceptance Corporation.
Pleas of prescription and exceptions filed both by the defendant and by the third-party defendant were overruled or referred to the merits, and after trial on the merits there was judgment in favor of plaintiff and against defendant Motors Insurance Corporation for $2,500, and judgment in favor of Motors Insurance Corporation and against third-party defendant General Motors Acceptance Corporation for the same amount. Both defendant and third-party defendant appealed suspensively.
In September, 1953, plaintiff bought a 1953 GMC truck from Johnson-Cefalu Buick Company of Amite for $4,154.80. The credit portion of the purchase price was evidenced by a promissory note for $2,854.80 payable in monthly installments and secured by a chattel mortgage on the truck. The vehicle was insured by the defendant Motors Insurance Corporation against fire, theft, etc.
On June 29, 1954, the truck was damaged by fire. The next day, at plaintiff's request Butler Motor Company in Clinton notified the insurance company that the truck had been damaged by fire and asked that it send for the truck and repair it. The following day, pursuant to plaintiff's request, a representative of the insurance company came to Clinton and removed the truck from Butler Motor Company, where it had been stored, to Lewis Chevrolet Company in Kentwood to be repaired. While the truck was stored by the insurance company in Kentwood with Lewis Chevrolet Company, a representative of the insurance company requested that plaintiff sign a document styled "Loss or Damage Agreement". This representative explained to the plaintiff that the insurance company required the execution of this document so that the necessary repairs could be made to the truck. The plaintiff refused to execute this agreement because of a clause releasing and discharging the insurance company from any and all liability under the policy. Due to the language of the document and a clause which the representative testified he proposed to insert in it, we think the plaintiff was justified in refusing to sign the document.
After the fire plaintiff failed to pay the July, August, and September installments on his note for the balance of the purchase price. The finance company, third-party defendant, which was the holder of the note, without the authority and the knowledge of the plaintiff and without instituting legal proceedings took possession of the truck and caused it to be moved from Lewis Chevrolet Company in Kentwood, where it had been stored by the insurance company, to Johnson-Cefalu Buick Company in *608 Amite, and obtained from the Buick company a receipt for the truck dated September 7, 1954.
According to the testimony of a representative of the finance company, the truck was delivered to the original seller, Johnson-Cefalu Buick Company, under a repurchase plan, by which a motor vehicle repossessed by the finance company is returned to the selling dealer, who repurchases the contract and pays the finance company the balance due under the contract. According to this representative, the Buick company, the original seller of the truck, paid to the finance company the balance due under plaintiff's contract. Consequently at that time plaintiff's obligation on the purchase contract was satisfied as far as the finance company was concerned.
Johnson-Cefalu Buick Company in due course filed formal proof of loss with the insurance company under the loss payable clause of the policy. The insurance company authorized the repair of the truck, Johnson-Cefalu repaired the truck, and the insurance company according to its answer paid to that company $773.53 for these repairs. The Buick company thereafter sold the truck to some person whose identity is not shown by the record.
The present suit was instituted by Plummer against Motors Insurance Corporation on October 7, 1955, and this defendant made General Motors Acceptance Corporation a third-party defendant on February 3, 1956.
As shown in argument and in brief in this court, all counsel seem to be in doubt as to the nature of plaintiff's cause of action, and, in fact, plaintiff's counsel stated in argument that he himself was not entirely sure of the nature of the action. However, we think a fair and liberal construction of the petition is that the suit is one for a breach by the insurance company of its obligation to return plaintiff's truck to him.
Under the petition and the established facts, it is clearly shown, and is even admitted by the defendant insurance company, that the insurer obtained possession of the truck at plaintiff's request for the purpose of having it repaired. Under these circumstances its possession was a legal possession. Plaintiff seeks to recover the value of this truck on the basis that defendant insurance company has refused either to repair and return the truck or to pay him its value.
Defendant made no offer or effort to return the property, evidently because it was not in a position to do so. As admitted in its answer and shown by the facts, it no longer had the control and custody of the vehicle which had been entrusted to it for the purpose of making repairs, for the truck had been "repossessed" by General Motors Acceptance Corporation, the finance company, whose representative had taken control of it.
When defendant Motors Insurance Corporation took possession of Plummer's damaged truck for the purpose of repairing the fire damage to the vehicle, the company became a depositary under Article 2926 of our Civil Code. Under Article 2937 as depositary it was bound to use the same diligence in preserving the vehicle, the deposit, that it uses in preserving its own property, and under Article 2944 as depositary it was bound to return the vehicle to plaintiff. This is the obligation which the insurance company breached.
The only defense offered for the breach of this obligation is that the motor vehicle was, as expressed by defendant, "repossessed" by the finance company; but, as we have pointed out in our statement of the facts, this finance company took possession of the truck without the knowledge and consent of the plaintiff and without instituting legal proceedings. This action by the finance company was illegal and improper. Neither the defendant nor the third-party defendant disclosed any of the facts and circumstances surrounding the taking of the truck by the finance company, except merely to state that it was "repossessed". Thus *609 we are unable to state whether the finance company took the truck with the knowledge and consent of the main defendant and under some agreement between them, or whether it took the truck without the main defendant's knowledge or consent. These facts are certainly within the knowledge of the insurance company and the finance company, but neither made any effort to disclose them.
The defense offered by the insurance company is no defense either in law or in fact, for it cannot justify its actions in this case by simply stating that the vehicle was "repossessed" by the finance company. Consequently the main defendant is liable to plaintiff for the breach of its obligation to return the vehicle. See James v. Greenwood, 20 La.Ann. 297; Paterno v. Kennedy The Cleaner, Inc., 18 La.App. 649, 138 So. 531; Royal Ins. Co., Limited, of Liverpool, England v. Collard Motors, La.App., 179 So. 108; Koerner v. Firestone Tire & Rubber Co., La.App., 17 So.2d 839.
On the theory that plaintiff's suit is one in tort, defendant insurance company filed a plea of one-year prescription under Article 3536 of the Civil Code, which provides that the action resulting from offenses and quasi-offenses is prescribed in one year. The provisions of this article have no application here since, as we have pointed out above, plaintiff's action is not one in tort.
On another theory, that plaintiff's suit is one on the contract of insurance, the insurance company filed exceptions of no right and no cause of action. These exceptions were levelled at the proposition that plaintiff had not complied with certain provisions of the insurance policy which state in substance that no action shall lie under the policy unless as a condition precedent the insured shall have filed proof of loss with the company. Plaintiff is not suing here under any provision of the insurance policy. Certainly it cannot be said that he is suing for the damage to the truck caused by fire or for what it would cost to repair the vehicle. Consequently, since the action is not on the policy, there was no requirement for him to file proof of loss before instituting this suit.
Third-party defendant, General Motors Acceptance Corporation, contends that its exception of no cause of action should have been sustained because Motors Insurance does not have a cause of action against it under the provisions of the Third-Party Practice Act, R.S. 13:3381 et seq. R.S. 13:3381 provides in part:
"In any civil action presently pending or hereafter filed the defendant in a principal action may be petition bring in any person (including a co-defendant) who is * * * or may be liable to him for all or part of the principal demand. * * *"
For a discussion of this statute see Bourree v. A. K. Roy, Inc., 232 La. 149, 94 So.2d 13; Ferrantelli v. Sanchez, La.App., 90 So.2d 351; Motors Securities Co. v. Hines, La.App., 85 So.2d 321; Automotive Finance Co. v. Daigle, La.App., 80 So.2d 579.
Although the Louisiana Third-Party Practice Act is new, having been passed in 1954, the idea of third-party practice is not a recent one. The device has been used for many years in the English courts and in Admiralty practice, and had already been adopted in half a dozen states in 1938 when it was incorporated in the Federal Rules of Civil Procedure, 28 U.S.C.A. See Willis, Five Years of Federal Third-Party Practice, 29 Va.L.Rev. 981 (1943).
One of the purposes of the third-party action is to allow a defendant in a civil action to implead one who will be secondarily liable to him if plaintiff's suit against him is successful. It is an important procedural device, the purpose of which is to avoid needless multiplicity of actions.
We believe that the instant suit is an excellent example of the validity of the third-party action. If General Motors *610 Acceptance Corporation had not been brought into this case as a third-party defendant, Plummer's recovery from Motors Insurance on the ground that the insurance company breached its obligation as a depositary by failing to return Plummer's truck would enable Motors Insurance in turn to file a separate suit against General Motors Acceptance Corporation to recover in quasi-contract or tort the amount it had been ordered to pay Plummer in the earlier suit.
It is our opinion, therefore, that in the instant case Motors Insurance stated a cause of action against General Motors Acceptance Corporation under R.S. 13:3381 by alleging in answer to Plummer's petition that his damaged truck had been taken from it by General Motors Acceptance Corporation, that the Acceptance Corporation was liable to Motors Insurance for all or part of any sum it might be ordered to pay Plummer, and that therefore General Motors Acceptance Corporation should be named a defendant in the case and cited in accordance with R.S. 13:3381.
In addition to its exception of no cause of action, the third-party defendant has filed a plea of prescription of one year. In connection with this plea it points out that although the finance company repossessed the truck on September 7, 1954, plaintiff's suit was actually filed on October 7, 1955, and third-party defendant was not sued until February 3, 1956, and that therefore both actions were begun more than a year after the repossessing. Under these facts third-party defendant asserts that the claim against it by Motors Insurance is one for unlawful conversion of plaintiff's truck and is an action in tort which is prescribed under the provisions of Article 3536 of the Civil Code.
The wrongful and illegal taking of the vehicle by third-party defendant and the subsequent sale to another made it impossible for the defendant insurance company to comply with its obligation to return the truck to plaintiff, and in this third-party action what the insurance company is saying to the third-party defendant is, in effect: "Your act caused the breach of my obligation to plaintiff, and as a result of this breach you should pay or indemnify me for any sum for which I may be cast." In other words, the insurance company in its action against third-party defendant is not seeking an award in damages for the wrongful and unlawful conversion of the property, but is only seeking indemnification in quasi-contract for any sum for which it may be cast in plaintiff's suit because of the breach of its obligation. See Kramer v. Freeman, 198 La. 244, 3 So.2d 609; Importsales, Inc., v. Lindeman, 231 La. 663, 92 So.2d 574. Under these circumstances the prescription provided in Article 3536 is without application.
To avoid liability in the instant case third-party defendant relies principally on the technical pleas which we have discussed above. On the merits it attempts to justify its taking of plaintiff's truck without resort to legal process by showing only that it tried repeatedly to reach the plaintiff by telephone and letter and through its representative, but, being unable to do so, concluded that plaintiff had abandoned the truck.
As we view this matter, there was no justification under the facts of this case for any such conclusion, and the act of the finance company was, to say the least, highly improper, illegal, and unjustified, and this defense amounts to no defense whatever.
To establish the value of the GMC truck, plaintiff called as a witness a GMC truck dealer who had been in the garage and automobile business for some 35 years. This witness stated that he was familiar with the truck in question; that at the time of the fire it was in excellent condition and had not been driven many miles; that he would allow $2,500 for the truck on a trade for a new truck but might have to take a little less than that for it on a sale. On *611 the other hand, the adjuster of the defendant insurance company, a man experienced in the field of automobile and truck appraisal, fixed the value of the truck before the fire at $2,100. Under these circumstances we think a fair value of the truck at the time of the fire would be $2,300. Of course the truck did not have this value after it was damaged by fire. It was subsequently repaired, however, as shown above, by the Buick dealer for $773.53. Accordingly at the time the truck was delivered to the defendant insurance company to be repaired and returned to the plaintiff, it had a value of $1,526.47. Under the facts and circumstances of this case, since defendant insurance company is not in a position to return the truck to plaintiff, plaintiff is entitled to a judgment for this amount. Accordingly the judgment will be amended by reducing the amount of the award to plaintiff against the insurance company to $1,526.47, and the amount of the award to the insurance company against third-party defendant, the finance company, to this same sum.
General Motors Acceptance Corporation says that the lower court erred in not allowing as compensation or credit on the judgment against it the amount of the balance due on the purchase price of the truck. The finance company is not entitled to credit or compensation for any balance that may be due by plaintiff because, according to the record, the seller of the truck, Johnson-Cefalu Buick Company, has repurchased plaintiff's contract from the finance company and paid the company the balance due.
The judgment is accordingly amended by reducing the amount of the award in favor of plaintiff, Charley Plummer, and against defendant, Motors Insurance Corporation, to $1,526.47, and by reducing the amount of the award in favor of Motors Insurance Corporation and against General Motors Acceptance Corporation to $1,526.47. Third-party defendant, General Motors Acceptance Corporation, is to pay all costs.
FOURNET, C. J., HAMLIN, J. ad hoc, and SIMON, J., concur in part and dissent in part.
FOURNET, Chief Justice (dissenting in part and concurring in part).
The defendant, Motors Insurance Corporation, having taken possession of plaintiff's truck in order that it might discharge its obligation under its policy of insurance to repair the damage caused by the fire, was obligated "to restore the precise object it received" (Article 2944 of the Revised Civil Code) "in the state in which it is at the moment of restitution" (Article 2945), and having failed to timely make such restitution, it is liable to plaintiff for the full value of the truck as repaired, which, according to the findings of the majority, is $2,300.
The majority in fixing the amount plaintiff is entitled to recover here on the basis of the value of the truck in its damaged condition at the time it was deposited with the defendant insurance corporation, evidently overlooks the fact that although the law of bailment universally obtaining requires a bailee to return the object in the condition in which it was received, subject to ordinary wear and tear, failing which the bailee becomes liable for its equivalent in value, it is equally true that by special contract a bailee's obligation may be either limited or extended, i. e., made more or less onerous. Consequently, each case must be decided in accordance with its particular facts and the agreement of the parties.
Under the facts of the case as I understand them from the majority opinion, there is neither basis nor logic to warrant the deduction of the amount the insurance company extended in repairing the car $773.53an obligation it undertook to and did in fact carry out, and for which it was fully compensated. Its obligation was to return the truck to the plaintiff fully repaired, as contracted, and not in the damaged condition in which it was received. It necessarily follows, therefore, that the defendant, *612 for its failure to timely make restitution of the fully repaired truck, is liable to plaintiff for its value in the condition it had obligated itself to return it.
I am in full accord with the majority holding that whatever judgment be rendered against the defendant insurance company, a similar judgment should be rendered in favor of it and against the General Motors Acceptance Corporation.
HAMLIN, Justice ad hoc (concurring in part and dissenting in part).
I concur in the opinion and decree to the extent that is in favor of plaintiff. However, I believe that award is insufficient.
I am of the opinion that, the value of the truck at the time of the fire on June 29, 1954 being $2,300, its value at the time of delivery to the insurance company the following day was $1,526.47, plus the obligation of the insurance company to repair it, amounting to $773.53, or a total of $2,300.
If the insurance company had caused the truck to be promptly repaired and returned to plaintiff, its value of $2,300 would not have been affected. This sum should be the amount of the award.